# Exhibit E

AEXEC

# THE ELEMENTS

# COMMERCIAL POLICY



# Republic - Vanguard Insurance Company

## An AmTrust Financial Company

**800 SUPERIOR AVENUE EAST, 21ST FLOOR**

**CLEVELAND, OH 44114**

**877-528-7878**

INSURANCE IS PROVIDED BY
THE COMPANY DESIGNATED ON THE
DECLARATIONS PAGE
(A Stock Insurance Company)

THIS POLICY CONSISTS OF:
-- DECLARATIONS
-- COMMON POLICY CONDITIONS
-- ONE OR MORE COVERAGE PARTS, and
-- APPLICABLE FORMS AND ENDORSEMENTS

IL-PJ-RVIC 1016

## Read Your Policy Carefully

This policy is a legal contract between you and us.  The information on this page is not the insurance contract and only the actual policy provisions will control.  The policy sets forth in detail the rights and obligations of both you and us.  **It is therefore important that you read your policy carefully.**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of the policy.

This policy is signed by the President and Secretary of the insurance company and, if required by State law, this policy shall not be valid unless countersigned on the Declaration page by its authorized representative.

President                                    Secretary

ILSIGDEC-H 0414

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004



# HR
## Hotline

### For on-demand expertise

AmTrust

59 Maiden Ln

New York

NY

10038

877-528-7878

https://amtrustfinancial.com/exec



## What is the HR Hotline?

The HR Hotline is a service staffed by HR professionals, available by phone or email, to answer your HR-related questions. As a valued client, you will have access to personalized, professional HR consultation and expertise every month.

844-447-5463
hrhotline@zywave.com

## What can you ask about?

- Employee benefits
- Leaves of absence
- Federal compliance
- State employment law
- Wage and hour issues
- Discipline and terminations

- Recruiting and hiring
- Employee relations
- Workers' compensation
- Investigations
- Performance management

AmTrust is happy to provide this HR Hotline service to you. In addition to answering your pressing HR questions, the HR professionals will refer you to relevant content to help you execute on their expertise.

© 2014-2017 Zywave, Inc. All rights reserved.

 Republic Vanguard Insurance Company

## General Declarations

NOTICES: THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. SUCH COVERAGE IS LIMITED TO LIABILITY FOR (I)**CLAIMS** FIRST MADE AGAINST **INSUREDS** DURING THE **POLICY PERIOD** OR, IF APPLICABLE, THE EXTENDED REPORTING PERIOD, AND (II)OTHER MATTERS, CIRCUMSTANCES OR **WRONGFUL ACTS** FIRST OCCURRING DURING THE **POLICY PERIOD** AND COVERED UNDER THIS POLICY. COVERAGE UNDER THIS POLICY IS CONDITIONED UPON NOTICE BEING TIMELY PROVIDED TO THE **INSURER** AS REQUIRED UNDER SECTION VI. OF THE GENERAL TERMS AND CONDITIONS. ANY COVERED **DEFENSE COSTS**, AND **INVESTIGATION COSTS** SHALL REDUCE THE LIMITS OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND MAY BE APPLIED AGAINST THE RETENTION AMOUNT. EXCEPT AS EXPRESSLY PROVIDED FOR IN THE EMPLOYMENT PRACTICES LIABILITY **COVERAGE ELEMENT** AND THE FIDUCIARY LIABILITY **COVERAGE ELEMENT**, THE **INSURER** DOES NOT ASSUME ANY DUTY TO DEFEND. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

POLICY NUMBER:          RVA1001144 03

1. **NAMED INSURED**:          Eustis Mortgage Corporation
   **Named Insured** Address:  1001 Julia Street
                               New Orleans, LA 70113

2. **POLICY PERIOD:**          Inception:    August 19, 2022
                               Expiration:   August 19, 2023

                               The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Insured** Address.

3. COVERAGES AND LIMITS OF LIABILITY APPLICABLE TO THIS POLICY:

| **Coverage Element** | **Coverage Element** Limit of Liability |
|---|---|
| ☐ (a)Public Company Liability **Coverage Element** | |
| ☐ (b)Private Company Liability **Coverage Element** | |
| ☒ (c)Employment Practices Liability **Coverage Element** | $2,000,000 |
| ☐ (d)Fiduciary Liability **Coverage Element** | |
| ☐ (e)Not For Profit Directors and Officers and Organization Liability **Coverage Element** | |

POLICY AGGREGATE LIMIT OF LIABILITY
For all **Coverage Elements** combined:          $2,000,000

4. **INSURER**:          Republic Vanguard Insurance Company
   (a) **Insurer** Address:  800 Superior Ave E., 21st Floor
                             Cleveland, OH 44114
                             877-528-7878

(b) Notice of **Claim** or circumstances:

      By E-Mail:               anaclaimsreporting@amtrustgroup.com
      By Mail:                 Republic Vanguard Insurance Company
                                      233 N Michigan Ave.
                                      Suite 1200
                                      Chicago, IL 60601

    (c) All other notices:        AmTrust Exec
                                    233 N Michigan Ave.
                                    Suite 1200
                                    Chicago, IL 60601

5.   EXTENDED REPORTING PERIOD:    Period:       12 Months
                                         Premium:    150% of the annual premium

6.   PREMIUM: ▮▮▮▮▮

**This policy is issued by an insurer not authorized to do business in Louisiana and, as such, the form, financial condition and rates are not subject to review by the commissioner of insurance and the insured is not protected by any guaranty fund.**

IN WITNESS WHEREOF, the **Insurer** has caused this policy to be signed below by its President, Secretary or duly authorized representative.

_____
AUTHORIZED REPRESENTATIVE

# General Terms and Conditions

In consideration of the premium charged, and in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

## I. TERMS AND CONDITIONS

In addition to the terms and conditions set forth in these General Terms and Conditions, the terms and conditions of each **Coverage Element** shall apply to, and only to that particular **Coverage Element** and in no way shall be construed to apply to any other **Coverage Element**. If any provision of the General Terms and Conditions is inconsistent or in conflict with terms and conditions of any **Coverage Element**, the terms and conditions of such **Coverage Element** shall control for purposes of that **Coverage Element**.

## II. DEFINITIONS

The following terms whenever set forth in boldface type in this policy, whether in singular or in plural, shall have the meanings indicated. Any other terms set forth in boldface type in the General Terms and Conditions will have the meanings indicated in the applicable **Coverage Element**.

A. **Application** means
(i)   the signed application for this policy, if any; all applications for any policy of which this policy is a renewal or replacement; and all applications which it may succeed this policy in time including any attachments thereto; and
(ii)  other materials or information submitted to or relied upon by the **Insurer** in connection with the underwriting of this policy, including but not limited to any filings made by the **Company** to the Securities Exchange Commission or any similar state, local, or foreign governmental entity, within the 12 months preceding the inception date of this policy.
The materials defined in (i) and (ii) above shall be deemed attached to and part of this policy.

B. **Company** means (i) the **Named Insured**; (ii) any **Subsidiary**; and (iii) the **Named Insured** or any **Subsidiary** as a debtor-in-possession under United States of America bankruptcy law or similar legal status under foreign law.

**Company** does not include and coverage shall not apply under any **Coverage Element** to, any **Subsidiary**, or any **Executive** or **Employee** of any **Subsidiary** for any **Wrongful Act** committed, attempted, or allegedly committed or attempted, prior to or subsequent to such entity having met the definition of **Subsidiary** as defined in that **Coverage Element**.

C. **Coverage Element** means collectively or individually the Directors and Officers and Private Company Liability **Coverage Element**, the Directors and Officers and Public Company Liability **Coverage Element**, the Employment Practices Liability **Coverage Element** or the Fiduciary Liability **Coverage Element** but only with respect to those indicated as included as part of this policy by all three of the following:
(i)   indicated by ⊠ in the General Declarations. (☐ indicates the **Coverage Element** is not included)
(ii)  for which a **Coverage Element** Limit of Liability is indicated in Item 3 of the General Declarations; and
(iii) for which such **Coverage Element** Declarations and coverage form are attached to and form part of this policy.

D. **Domestic Partner** means a person legally recognized as a domestic or civil union partner under the provisions of any applicable federal, state or local statutory or common law or under the provisions of any formal program established by a **Company**.

E. **Financial Insolvency** means:

(i) the appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate a **Company**;

(ii) the filing of a petition under the bankruptcy laws of the United States of America by a **Company**; or

(iii) as to both (i) or (ii) of this Definition, any equivalent events outside the United States of America.

F. **Indemnifiable Loss** means **Loss** for which the **Company** or **Outside Entity** is permitted or required to indemnify or advance to the **Individual Insureds**.

G. **Insurer** means the insurance company set forth in Item 4 of the General Declarations.

H. **Management Control** means: (i) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or (ii) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the management board of a limited liability company.

I. **Named Insured** means the entity set forth in Item 1. of the General Declarations.

J. **Policy Period** means the period of time from the inception date set forth in Item 2 of the General Declarations to the earlier of the expiration date set forth in Item 2 of the General Declarations or the effective date of cancellation of this policy. In the event of cancellation of this policy, the effective date of cancellation shall replace the expiration date in Item 2 of the General Declarations.

K. **Related Wrongful Acts** means **Wrongful Acts** which are the same, repeated or continuous **Wrongful Acts**, or **Wrongful Acts** which arise from a common causal connection or cause the same or related damages, or have a common nexus or nucleus of facts. **Claims** can allege **Related Wrongful Acts** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

## III.  SPOUSES, ESTATES

Subject otherwise to the terms, conditions and limitations of this policy, this policy provides coverage for any **Claim** solely for **Wrongful Acts** committed or allegedly committed by the **Individual Insureds** made against:

(i) the estates, heirs, or legal representatives of such **Individual Insureds**, in the event of their incompetency, insolvency or bankruptcy; or

(ii) the lawful spouse or legally recognized **Domestic Partner** (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world and hereinafter included in the term "spouse") of any such **Individual Insured** for all **Claims** arising solely out of his or her status as spouse of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse, or property transferred from the **Individual Insured** to the spouse.

This extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Individual Insured**, subject to the policy's terms, conditions and exclusions.

## IV.  LIMITS OF LIABILITY

A. Except as may otherwise be provided with respect to the Additional Executive Limit of Liability under the Directors and Officers and Private Company Liability **Coverage Element** if applicable, the Policy Aggregate Limit of Liability set forth in Item 3(e) of the General Declarations shall be the maximum aggregate limit of the **Insurer**'s liability for all **Loss** under

all **Coverage Elements** combined. The purchase of the Extended Reporting Period shall not in any way increase or reinstate any Limits of Liability.

B.  The **Coverage Element** Limit of Liability set forth in Items 3(a), 3(b), 3(c) and 3(d) of the General Declarations shall be the maximum aggregate limit of the **Insurer**'s liability under each applicable **Coverage Element** for all **Loss** under that respective **Coverage Element**. Each such **Coverage Element** Limit of Liability shall be part of and not in addition to the Policy Aggregate Limit of Liability set forth in Item 3(e) of the General Declarations. The Policy Aggregate Limit of Liability set forth in Item 3(e) of the General Declarations shall be reduced and may be exhausted by payments of **Loss** under any one or more of the applicable **Coverage Elements**.

C.  Any sub-limits of liability set forth in any applicable **Coverage Element** Declarations shall be part of and not in addition to the Policy Aggregate Limit of Liability set forth in Item 3(e) of the General Declarations and the applicable **Coverage Element** Limit of Liability set forth in that respective **Coverage Element** Declarations.

D.  The **Insurer**'s obligations for all **Claims** shall cease upon exhaustion of the Policy Aggregate Limit of Liability and; to the extent any individual applicable **Coverage Element** Limit of Liability is exhausted, the **Insurer**'s obligations for all **Claims** under that particular **Coverage Element** shall cease.

E.  **Defense Costs** incurred by the **Insurer** or by the **Insureds** shall be part of and not in addition to the applicable limits of liability.  Payment of **Defense Costs** by the **Insurer** shall reduce and may exhaust all applicable limits of liability.

## V.  RETENTIONS

A.  The Retentions set forth in the respective **Coverage Element** Declarations are separate Retentions pertaining only to **Claims** under that applicable **Coverage Element**. The application of a Retention under one **Coverage Element** shall not reduce or eliminate the Retention under any other applicable **Coverage Element**.

B.  With respect to a **Claim** under any applicable **Coverage Element**, the **Insurer** shall only pay **Loss** which is in excess of the amount set forth in the **Coverage Element** Declarations as the Retention applicable to each such **Claim** under the applicable **Coverage Element**.  Such Retention shall be borne by the **Insureds** and shall remain uninsured.

C.  If more than one Retention is applicable to any one **Claim**, the applicable Retentions will be applied separately to the **Loss** resulting from such **Claim**, the payment of any Retention under one **Coverage Element** won't reduce or eliminate the Retention under any other.

D.  All **Claims** arising out of the same **Wrongful Act** or **Related Wrongful Acts** shall be deemed a single **Claim** and shall be deemed to be first made against the **Insureds** on the date the earliest of such **Claims** is first made against any **Insureds.**

E.  Amounts incurred for **Defense Costs** shall be applied against the applicable Retention.

## VI.  REPORTING AND NOTICE

A.  The **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give notice to the **Insurer** by mail or electronically to the address set forth in Item 4(b) of the General Declarations of:

(i)   any **Claim** made against an **Insured,**
(ii)  any matter which could involve the payment of **Adverse Media Event Loss** under the Directors and Officers and Public Company Liability **Coverage Element** or Directors and Officers and Private Company **Coverage Element**, if purchased;
(iii) any matter which could involve the payment of **Voluntary Compliance Loss** under the **Fiduciary Liability Coverage Element,** if purchased; or
(iv)  any **Derivative Demand** Investigation under the Directors and Officers and Public Company Liability **Coverage Element** or Directors and Officers and Private Company **Coverage Element**, if purchased,

as soon as practicable but no later than 60 days after the expiration date shown in Item 2 of the General Declarations or its earlier cancellation or prior to the end of the Extended Reporting Period, if applicable.

Any subsequent **Claim** which is made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in a prior **Claim** for which notice already has been given, or which alleges any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to an alleged prior **Claim** for which notice already has been given, shall be considered made at the time notice of the prior **Claim** originally was given.

B.  If during the **Policy Period** or the Extended Reporting Period, if applicable, the **Insureds** become aware of any circumstances or **Wrongful Act** which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and give notice, by mail or electronically to the address set forth in Item 5 (b) of the General Declarations of such circumstances, along with a description of the alleged **Wrongful Act,** the allegations anticipated, the reasons for anticipating a **Claim**, and full particulars as to dates, persons and entities involved, then any **Claim** which subsequently is made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstance or **Wrongful Act** originally was reported.

Notice pursuant to A. or B. above shall reference the policy number set forth in the General Declarations. If mailed, the date received by the **Insurer** shall constitute the date that such notice was given.

C.  All notices other than those notices provided for in A. and B. above shall be sent to the **Insurer** at the address set forth in Item 4(c) of the General Declarations.

## VII.  CANCELLATION

This policy or any individual **Coverage Element** may be canceled by the **Named Insured** at any time by mailing prior written notice to the **Insurer** stating which **Coverage Elements** are to be canceled or that the entire policy is to be canceled and when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall be the date the **Insurer** received such notice or any later date specified in the notice, and such effective date shall become the end of the **Policy Period** either for the entire policy or for that respective **Coverage Element** whichever is cancelled.

This policy may be canceled by or on the behalf of the **Insurer** only in the event of non-payment of premium by the **Named Insured**. In the event of non-payment of premium by the **Named Insured**, the **Insurer** may cancel this policy by delivering to the **Named Insured** or by mailing to the **Named Insured**, by registered, certified or other first class mail, at the **Named Insured**'s address as stated in Item 1 of the General Declarations, written notice stating when, not less than 10 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice.

If the policy or any **Coverage Element** shall be canceled by the **Named Insured**, the **Insurer** shall retain the short rate proportion of the applicable premium herein.

If the Policy is canceled by the **Insure**r, the **Insurer** shall retain the pro rata proportion of the applicable premium herein.

Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

## VIII.  EXTENDED REPORTING PERIOD

Upon expiration or cancellation of this policy, other than for non-payment of premium, the **Insureds** shall have the right, upon payment of the additional premium indicated in Item 5. of the General Declarations not more than 30 days after the earlier of the expiration date or effective date of cancellation, to an extension of the Notice of Claim provision described in VI. Reporting and Notice of these General Terms and Conditions, for the length of time shown in Item 5 of the General Declarations, commencing on the earlier of the expiration date or effective date of cancellation. Such extension of time to report a **Claim** (herein referred to as the Extended Reporting Period wherever it appears in this policy) shall apply only to **Wrongful Acts** committed, attempted, or allegedly committed or attempted, prior to the earlier of the expiration date or effective date of cancellation, and which are not otherwise excluded by any terms and conditions of this policy. Any **Claim** first made during the Extended Reporting Period shall be deemed to have been made during the **Policy Period**.

As a condition precedent to the right to purchase the Extended Reporting Period, the total premium for this policy must have been paid and the premium for the Extended Reporting Period must be paid in full with written notice of the **Insured**'s election to purchase the Extended Reporting Period not more than 30 days after the earlier of the expiration date or effective date of cancellation. The **Insured**'s right to purchase the Extended Reporting Period shall otherwise lapse.

If the Extended Reporting Period is purchased, the additional premium shall be deemed fully earned, and the Extended Reporting Period cannot be canceled by any **Insured** or the **Insurer**.

If any premium is owed for the policy, any premium received from the **Named Insured** shall first be applied to the premium owing for the policy with the remainder applied to the premium for the Extended Reporting Period. The Extended Reporting Period shall not take effect unless the outstanding premium for the policy is paid in full and the premium for the Extended Reporting Period is paid when due.

The purchase of the Extended Reporting Period shall not in any way increase or reinstate any limits of liability.

## IX.  CHANGE OF CONTROL

If during the **Policy Period**:

1.  the **Named Insured** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert, or
2.  any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Insured**,

(1 and/or 2 herein referred to as a Change In Control), then this policy may not be cancelled thereafter and it shall not, in any event, apply to any **Claim** alleging in whole or in part any **Wrongful Acts** committed, attempted or allegedly committed or attempted by any **Insured** subsequent the date of such Change In Control.

The **Named Insured** shall give the **Insurer** written notice of the Change In Control as soon as practicable, but no later than 30 days after the effective date of the Change In Control together with such other information as the **Insurer** may require.

## X.  SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to bring suit effectively in the name of any **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Individual Insured** under this policy unless such **Individual Insured** has been convicted of a criminal act or been determined by a final adjudication to have committed a dishonest or fraudulent act or to have obtained any profit or advantage to which such **Individual Insured** was not legally entitled.

In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer**'s subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances. Additionally, upon the **Insurer** making any payment of **Loss** within the applicable Retention, the **Insurer** shall have a direct contractual right under this policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States), such **Loss** which was paid within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer**'s subrogation right pursuant to this Section X. and any other rights the **Insurer** may have under applicable law.

## XI.  REPRESENTATIONS AND SEVERABILITY

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this policy as being accurate and complete. All such statements and representations are the basis of this policy and are to be considered as incorporated into this policy.

In the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under any individual **Coverage Element** then that respective **Coverage Element** and only that **Coverage Element** shall be void *ab initio* as to any **Insured** who knew as of the inception date of the **Policy Period** of the facts that were not accurately and completely disclosed in the **Application** (whether or not such **Insured** knew that such facts were not accurately and completely disclosed in the **Application**). Solely for purposes of determining whether this policy shall be void *ab initio* as to an **Insured**, such aforesaid knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured** and only the knowledge possessed by any past, present or future chairman, chief executive officer or chief financial officer (or equivalent positions) of a **Company** or the signatory of the **Application** shall be imputed to such **Company**.

## XII.  NOTICE AND AUTHORITY

The **Named Insured** shall act on behalf of all **Insureds** with respect to the giving of notice of any **Claim**, the giving and receiving of notice of cancellation and non-renewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer,** and the exercising or declining to exercise any right to an Extended Reporting Period.

## XIII.  ASSIGNMENT

No change in, modification of or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of the **Insurer**.

## XIV.  ACTION

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured**'s obligation to pay shall have been finally determined either by final judgment against the **Insured** or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or entity, or the legal representative thereof, who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or entity shall have any right under this policy to join the **Insurer** as a party to any action against the **Insured** or a **Company** to determine the **Insured**'s liability, nor shall the **Insurer** be impleaded by the **Insured** or a **Company** or their legal representative.

## XV.  BANKRUPTCY

Bankruptcy or insolvency of any **Insured** or the **Insured**'s estate shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this policy.

## XVI.  COVERAGE TERRITORY

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

For **Claims** made and maintained and **Wrongful Acts** committed in any jurisdiction other than the United States of America or any of its territories or possessions, all premiums, limits of liability, Retentions, **Loss** and other amounts are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Insured**) or in United States of America dollars at the rate of exchange published in The Wall Street Journal on the next publication date of The Wall Street Journal after the **Insurer**'s obligation to pay such **Loss** is established.

## XVII.  GOVERNMENTAL RESTRICTIONS

This policy does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the **Insurer** from providing insurance.

## XVIII.  HEADINGS

The descriptions in the headings and subheadings of this policy, including in any **Coverage Element**, are solely for convenience and form no part of the terms and conditions of coverage.

 Republic Vanguard Insurance Company

**Employment Practices Liability Coverage Element Declarations**

1.  **NAMED INSURED:**           Eustis Mortgage Corporation

2.  **POLICY PERIOD:**           Inception:      August 19, 2022
                                 Expiration:     August 19, 2023
                                 The **Policy Period** incepts and expires as of 12:01 A.M. at the
                                 **Named Insured** Address.

3.  **COVERAGE ELEMENT** LIMIT OF LIABILITY**:**                      $2,000,000

4.  RETENTIONS:
    (a) Each **Claim** for an **Employment Practices Violation:**     $50,000
    (b) Each **Claim** for a **Third Party Violation:**               $50,000

5.  CONTINUITY DATE:             NOT APPLICABLE

# Employment Practices Liability Coverage Element

In consideration of the premium charged and in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this policy, and subject to all the terms and conditions of this policy, the **Insurer** agrees as follows:

## I. Insuring Agreements

The **Insurer** shall pay **Loss** of an **Insured** arising from a **Claim** first made against such **Insured** during the **Policy Period** or Extended Reporting Period if applicable for any actual or alleged **Wrongful Act** of such **Insured**.

## II. Definitions

In addition to the Definitions in the General Terms and Conditions, the following terms whenever set forth in boldface type in this **Coverage Element**, whether in singular or in plural, shall have the meanings indicated.

A. **Claim** means
   1. a written demand for monetary, non-monetary or injunctive relief, (including any request to toll or waive any statute of limitations);
   2. a civil, criminal, administrative or regulatory proceeding for monetary, non-monetary or injunctive relief which is commenced by:
      (i)    service of a complaint or similar pleading;
      (ii)   return of an indictment, information or similar document (in the case of a criminal proceeding); or
      (iii)  receipt or filing of a notice of charges, including, but not limited to, an Equal Employment Opportunity Commission ("EEOC") or Office of Federal Contract Compliance Program ("OFCCP") (or similar federal, state or local agency) proceeding or investigation: or
   3. an arbitration proceeding pursuant to an employment contract, policy or practice of a **Company** commenced by receipt of a demand for arbitration or similar document.
   However, in no event shall the term "**Claim**" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

B. **Defense Costs** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

C. **Employee** means any past, present or future employee of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including
   1. any part-time, seasonal and temporary employee,
   2. volunteer, individual who is contracted to perform work for a **Company**, or independent contractor for a **Company** in his or her capacity as such, or
   3. an individual who is leased to a **Company**,
   but only if such **Company** provides indemnification to such employees, volunteers or individuals in the same manner as is provided to such **Company's** own employees. A **Company** may request that no coverage be provided under this **Coverage Element** for an independent contractor or leased employee named in a specific **Claim**. Such request must be made in writing and within 90 days of the **Claim** being reported to the **Insurer**. If no such request is made, this **Coverage Element** shall apply as if such **Company** determined that such independent contractor or leased employee shall receive coverage.

D. **Employment Practices Violation** means the following actual or alleged acts whether committed directly or indirectly, intentionally or unintentionally:
   1. wrongful, including constructive termination of employment (actual or constructive), dismissal or discharge;
   2. breach of an implied contract of employment;

3. harassment, sexual harassment or creation of a hostile work environment;
4. discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);
5. **Retaliation**;
6. employment-related misrepresentations to an **Employee** of a **Company** or applicant for employment with a **Company** or an **Outside Entity**;
7. employment-related libel, slander, humiliation, defamation or invasion of privacy;
8. wrongful failure to employ or promote;
9. wrongful deprivation of a career opportunity with a **Company**, wrongful discipline, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an **Employee** reference;
10. failure to grant tenure; or
11. with respect to 1 through 10 above, negligent hiring, retention, training, supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent organizational policies and procedures, or violation of an individual's civil rights;

but only if the actual or alleged **Employment Practices Violation** is brought by an **Employee** or an **Outside Entity Employee**, or by an applicant for employment with a **Company** or an **Outside Entity**.

E. **Executive** means:
1. any past, present or future duly elected or appointed director, officer, management committee member of a duly constituted committee or member of the Board of Managers;
2. any past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a jurisdiction other than the United States of America or any of its territories or possessions that is equivalent to an executive position listed in subparagraph 1. of this Definition; or
3. any past, present or future General Counsel and Risk Manager (or equivalent position) of the **Named Insured**.

F. **Individual Insured** means any:
1. **Executive**;
2. **Employee**; or
3. **Outside Entity Executive**.

G. **Insured** means any:
1. **Company**; or
2. **Individual Insured**.

H. **Loss** means
1. the amount that any **Insured** becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to:
(i) judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements;
(ii) damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages (including the multiple or liquidated damages awarded under the Age Discrimination in Employment Act and the Equal Pay Act). The enforceability of this subparagraph (ii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;
(iii) salary, wages and bonus compensation, including back pay and front pay; and
(iv) A statutory award of attorneys' fees; and
2. **Defense Costs**;

**Loss** shall not include
1. any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**;
2. matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed;
3. employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation;

4. the costs and expenses of complying with any order of injunctive relief or other form of non-monetary relief, including any liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar;

5. civil or criminal fines or penalties; or

6. taxes or tax penalties or interest thereon (whether imposed by federal, state, local or other governmental authority).

**Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to 1. through 6. above provided such **Defense Costs** result from a covered **Claim**.

I. **Outside Entity** means any not-for-profit organization, other than a **Subsidiary**;

J. **Outside Entity Executive** means:

1. any **Executive** of a **Company** serving in the capacity as director, officer, trustee, trustee emeritus or governor of an **Outside Entity**, but only if such service is at the specific request or direction of a **Company**; or

2. any other person listed as an **Outside Entity Executive** in an endorsement to this Employment Practices Liability **Coverage Element**.

It is understood and agreed that, in the event of a disagreement between a **Company** and an individual as to whether such individual was acting at the specific request or direction of such **Company**, the determination of the **Named Insured** shall control on this issue. The **Named Insured**'s determination shall be made by written notice to the **Insurer** within 90 days after the **Claim** first is reported to the **Insurer** pursuant to the terms of this policy. In the event no determination is made within such period, this **Coverage Element** shall apply as if the **Named Insured** determined that such **Executive** was not acting at such **Company**'s specific request or direction.

K. **Retaliation** means an adverse employment act committed or allegedly committed by an **Insured** in response to any of the following activities:

1. the disclosure or threat of disclosure by an **Employee** of a **Company** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** that is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

2. the actual or attempted exercise by an **Employee** of a **Company** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights;

3. the actual or threatened filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or

4. the actual or threatened labor strikes of an **Employee** of a **Company** or an **Outside Entity**.

L. **Settlement Opportunity** means an **Insurer** recommended settlement that is within any applicable Limit of Liability and that is acceptable to the claimant.

M. **Subsidiary** means:

1. any for-profit entity in which the **Company** has or had **Management Control** on or before the inception date of the policy either directly or indirectly through one or more other **Subsidiaries**;

2. any for-profit entity in which the **Company** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Subsidiaries** and whose total number of employees does not exceed 35% of the total number of **Employees** that fall under the definition of **Insured** under this policy prior to the **Company** acquiring **Management Control** of the **Subsidiary**; or

3. any for-profit entity in which the **Company** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Subsidiaries** and whose total number of employees exceed 35% of the total number of **Employees** that fall under the definition of **Insured** under this policy prior to the **Company** acquiring **Management Control** of the **Subsidiary** but only for a period of 90 days subsequent to the **Company** acquiring **Management Control** of the **Subsidiary**.

N. **Third Party Violation** means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs 3 and 4 of the Definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when

such acts are committed or alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with a **Company** or an **Outside Entity**, including, but not limited to, customers, vendors and suppliers.

O.  **Wrongful Act** means any actual or alleged **Employment Practices Violation** or **Third Party Violation**.

## III. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.  alleging, arising out of, based upon or attributable to:
1.  the gaining of any profit or advantage to which any final adjudication establishes the **Insured** was not legally entitled; or
2.  the committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act or willful violation of statute, rule or law was committed. For purposes of determining the applicability of this exclusion (i) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (ii) only facts pertaining to and knowledge possessed by any past, present or future chairman, chief executive officer or chief financial officer (or equivalent positions) of a **Company** or the signatory of the **Application** shall be imputed to such **Company**;

B.  alleging, arising out of, based upon or attributable to the circumstances alleged or the same **Wrongful Act** or **Related Wrongful Act** alleged or contained in any claim or demand which has been reported, or to any circumstances, **Wrongful Act** or **Related Wrongful Act** of which notice has been given, under any prior insurer's policy or policy of which this **Coverage Element** is a renewal or replacement or which it may succeed in time;

C.  alleging, arising out of, based upon or attributable to any demand, suit, EEOC (or similar state, local or foreign agency) proceeding or investigation or other proceeding pending against any **Insured**, or order, decree or judgment entered for or against any **Insured**, on or prior to the Continuity Date set forth in Item 5 of the Employment Practices Liability **Coverage Element** Declarations, or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior demand, suit, EEOC (or similar state, local or foreign agency) proceeding or investigation or other proceeding in the underlying demand, order, decree or judgment;

D.  with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the Continuity Date set forth in Item 5 of the Employment Practices Liability **Coverage Element** Declarations if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **Coverage Element**;

E.  alleging, arising out of, based upon or attributable to any actual or alleged act, error or omission of an **Individual Insured** serving in any capacity other than as an **Executive** or **Employee** of a **Company** or as an **Outside Entity Executive** of an **Outside Entity**;

F.  for bodily injury, sickness, disease or death of any person, or damage to, loss of use or destruction of any tangible property. This Exclusion shall not apply to a **Claim** for emotional distress or mental anguish arising from a **Wrongful Act**;

G.  for violations of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law. This Exclusion shall not apply to the portion of a **Claim** attributable to **Retaliation**;

H.  alleging, arising out of, based upon or attributable to:

1.  the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered (other than tort-base back pay or front pay damages for non-conversion related torts);
2.  improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**; or
3.  the failure to provide or enforce legally required meal or rest break periods. This Exclusion shall not apply to the portion of a **Claim** attributable to **Retaliation**;

I.  alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law. This Exclusion shall not apply to the portion of a **Claim** attributable to **Retaliation**.

J.  alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any **Insured** under any express contract or agreement. This Exclusion shall not apply to:
1.  liability which would have attached in the absence of such express contract or agreement; or
2.  **Defense Costs**.

## IV. Limit of Liability

Subject to the Policy Aggregate Limit of Liability set forth in Item 3 of the General Declarations, the Limit of Liability set forth in Item 3 of the Employment Practices Liability **Coverage Element** Declarations shall be the maximum aggregate limit of the **Insurer**'s liability for all **Loss** under this **Coverage Element**. Upon exhaustion of the Limit of Liability set forth in Item 3 of the Employment Practices Liability **Coverage Element** Declarations or the Policy Aggregate Limit of Liability set forth in Item 3 of the General Declarations, the **Insurer**'s obligations under this **Coverage Element** shall be deemed completely fulfilled and extinguished and the **Insurer**'s duty to defend and pay **Defense Costs** shall end.

## V. Retentions

The following provision shall apply in addition to the provisions of Section V. Retentions of the General Terms and Conditions:

A.  The Retention set forth in Item 4(a) of the Employment Practices Liability **Coverage Element** Declarations shall apply to each **Claim** for an **Employment Practices Violation**. The Retention set forth in Item 4(b) of the Employment Practices Liability **Coverage Element** Declarations shall apply to each **Claim** for a **Third Party Violation**.

B.  The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention set forth in Item 4. of the **Employment Practices Liability Coverage Element** Declarations. Retention shall be borne by the **Insureds** and shall remain uninsured.

C.  A single Retention shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**.

D.  In the event a **Company** is unable to pay the applicable Retention due to **Financial Insolvency**, the **Insurer** shall advance payment for **Loss** within the applicable Retention. The **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from such **Company** pursuant to Section X. Subrogation of the General Terms and Conditions.

## VI. Defense Costs, Defense Counsel, Settlements & Judgments

A. Defense
Except as hereinafter stated, the **Insurer** shall have both the right and duty to defend any **Claim** made against an **Insured** alleging a **Wrongful Act**, even if such **Claim** is groundless, false or fraudulent. The **Insurer** shall have the right and duty to defend any **Claim** until the Limit of Liability set forth in Item 3 of the Employment Practices Liability **Coverage Element** Declarations or the Policy Aggregate Limit of Liability set forth in Item 3 of the General Declarations has been exhausted by payment of **Loss**. With the express prior written consent of the **Insurer**, an **Insured** may select a defense counsel different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest.

B. General Provisions
1. The **Named Insured** shall have the right to associate fully and effectively, at its own expense, with the **Insurer** in the defense of any **Claim** including but not limited to, choice of defense counsel and negotiating a settlement.
2. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation and take such actions which, in such **Insurer**'s judgment, are deemed necessary and practicable to prevent or limit **Loss** arising from any **Wrongful Act**.

C. Settlement
The **Insured** shall not admit or assume any liability, enter into any settlement agreement or stipulate to any judgment without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **Coverage Element**. The **Insurer** shall not unreasonably withhold any consent required under this **Coverage Element**, provided that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Claim** (or any portion thereof) is not covered under the terms of this **Coverage Element**. In addition, the **Insured** shall not take any action which prejudices the **Insurer**'s rights under this **Coverage Element**.

In the event the **Insureds** do not consent to the first **Settlement Opportunity** within 30 days of the date the **Insureds** first are made aware of such **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than 30 days after the settlement offer was made), then, subject to all applicable limits of liability, the **Insurer**'s liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity** Amount"), plus (2) 80% of covered **Loss** in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 20% of such covered **Loss** in excess of such **Settlement Opportunity** Amount shall be carried by the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until such Settlement Opportunity Amount exceeds the applicable Retention set forth in Item 4 of the Employment Practices Liability **Coverage Element** Declarations.

## VII. Other insurance

The insurance that is provided by this **Coverage Element** shall be primary unless expressly written to be excess over other applicable insurance, except that, in the event of a **Claim** against an **Insured** arising out of his or her service as an **Outside Entity Executive**, or a **Claim** against an **Insured** for the **Insured's** liability with respect to a leased individual or independent contractor as described in the Definition of **Employee**, coverage as is afforded by this policy specifically shall be excess of any: (1) indemnification provided by such **Outside Entity** or leasing company; and (2) any other insurance provided to such **Outside Entity**, leasing company or independent contractor.

## VIII. Allocation

If both **Loss** covered under this **Coverage Element** and loss not covered under this **Coverage Element** are incurred by the **Insureds** on account of any **Claim** because such **Claim** against the **Insureds** includes both covered and non-covered matters, then coverage under this **Coverage Element** with respect to such **Claim** shall apply as follows:

1. **Defense Costs**: 100% of **Defense Costs** incurred by the **Insured** or the **Insurer** on account of such **Claim** will be considered covered **Loss**; and
2. **Loss** other than **Defense Costs**: All remaining amounts incurred by the **Insured** on account of such **Claim** shall be allocated by the **Insurer** pro rata between covered **Loss** and non-covered loss based on the legal liability and financial exposures of the **Insureds** to covered and non-covered matters and, in the event of a settlement in such **Claim**, also based on the number of covered and non-covered counts, causes of action or allegations against the **Insureds**.

If the **Insureds** and the **Insurer** cannot agree on an allocation of covered **Loss** and non-covered loss:

A. no presumption as to allocation shall exist in any arbitration, suit or other proceeding; and
B. the **Insurer**, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two arbitrators.

# ELEMENTS SCHEDULE

Coverage Elements and Endorsements:


| | |
|---|---|
| PL-DEC-GTC-CW | Elements General Dec |
| PL33G100 | General Terms and Conditions |
| PL-DEC-EPL-CE | Elements Employment Practices Dec |
| PL33E102 | Employment Practices Liability Coverage Element |


1. CPS33005 0916 — Service of Suit
2. PBJE0053 1218 — Retaliation Extension
3. PBJE0048 1218 — Consumer Protection Exclusion
4. PBJE0027NA 0214 — Amended Definition of Employment Practices Violation – Add Workplace Bullying and Employment Related Tort
5. PBJG0165 0417 — Elements Enhancement Endorsement - EPL
6. PBJG0197 1219 — Biometric Privacy Claim Exclusion
7. PBJE0054 1218 — Third Party Violation Credit Exclusion
8. PL33E141 1112 — Immigration Expense Coverage Endorsement
9. PBJE0076 0619 — Amend Reporting and Notice (Top Executives)
10. PBJE0052 1218 — Continuity Date for Excess Limit of Liability
11. PBJE0051 1218 — Third Party Continuity Date for Excess Limit of Liability
12. PBJE0100 0320 — Fair Labor Standards Act Defense Costs Sublimit Excluding California and FFCRA Violations
13. PBJG0153 0816 — Add Mailing Address

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 1 |
| **NAMED INSURED** | Eustis Mortgage Corporation |
| **POLICY NUMBER** | RVA1001144 03 |
| **EFFECTIVE DATE** | August 19, 2022 |

## POLICYHOLDER NOTICE – SERVICE OF PROCESS

Service of process for any suit instituted against Republic Vanguard Insurance Company concerning this Policy may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the statute or his/her successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder and arising out of this Policy.

Republic Vanguard Insurance Company has designated:

Mr. Stephen Ungar, Secretary
AmTrust Financial Services, Inc.
59 Maiden Lane, 43rd Floor
New York, NY 10038

as the person(s)/organization to whom the Superintendent, Commissioner, or Director of Insurance or other specified person is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this Policy arises.

**ENDORSEMENT NUMBER**      2
**NAMED INSURED**           Eustis Mortgage Corporation
**POLICY NUMBER**           RVA1001144 03
**EFFECTIVE DATE**           August 19, 2022

This endorsement modifies only the selected **COVERAGE ELEMENT**(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the **COVERAGE ELEMENT**(s) indicated by an "X" below.

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY LIABILITY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY LIABILITY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY LIABILITY COVERAGE ELEMENT
☐ NOT FOR PROFIT DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE ELEMENT

## RETALIATION EXTENSION

THIS ENDORSEMENT MODIFIES THE POLICY.  PLEASE READ IT CAREFULLY.

In consideration of the premium charged, it is understood and agreed that the following extension is added to the policy:

> Retaliation Carve-Out of Exclusions: no exclusion set forth in section III. of the Employment Practices Liability Coverage Element shall apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insured**.

All other terms and conditions of this Policy remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 3 |
| **NAMED INSURED** | Eustis Mortgage Corporation |
| **POLICY NUMBER** | RVA1001144 03 |
| **EFFECTIVE DATE** | August 19, 2022 |

This endorsement modifies only the selected **COVERAGE ELEMENT**(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the **COVERAGE ELEMENT**(s) indicated by an "X" below.

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY LIABILITY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY LIABILITY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY LIABILITY COVERAGE ELEMENT
☐ NOT FOR PROFIT DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE ELEMENT

## CONSUMER PROTECTION EXCLUSION

THIS ENDORSEMENT MODIFIES THE POLICY.  PLEASE READ IT CAREFULLY.

Employment Practices Liability Coverage Element Section **III. Exclusions** is amended to include the following:

The **Insurer** shall not be liable for **Loss** on account of any **Claim**, in whole or in part, and shall not be obligated to defend any **Claim** made against the **Insured**:

Based upon, arising out of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** which violate(s) or is/are alleged to violate any federal or state consumer protection statute, law, rule, ordinance or regulation including, but not limited to:

1. The Telephone Consumer Protection Act of 1991 (TCPA), any amendment thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

2. The CAN-SPAM Act of 2003, any amendment thereof or any similar or related federal or state statute, law, rule, ordinance or regulation;

3. Any federal, state or local statute, law, rule, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 and their amendments and additions, that addresses, prohibits, or limits the printing, interception, dissemination, disposal, collecting, recording, sending, transmitting, communicating, distribution or receiving of private material, private communications or private information.

**ENDORSEMENT NUMBER**          4
**NAMED INSURED**              Eustis Mortgage Corporation
**POLICY NUMBER**             RVA1001144 03
**EFFECTIVE DATE**            August 19, 2022

This endorsement modifies only the selected COVERAGE ELEMENTS(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE ELEMENT(s) indicated by an "X" below

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY COVERAGE ELEMENT
☐ NOT FOR PROFIT DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE ELEMENT

# AMENDED DEFINITION OF EMPLOYMENT PRACTICES VIOLATION – Add Workplace Bullying and Employment Related Tort

It is agreed that the Section II. Definitions. D. **Employment Practices Violation** is deleted in its entirety and replaced with the following:

D.  **Employment Practices Violation** means the following actual or alleged acts whether committed directly or indirectly, intentionally or unintentionally:
1.  wrongful, including constructive termination of employment (actual or constructive), dismissal or discharge;
2.  breach of an implied contract of employment;
3.  harassment, sexual harassment or creation of a hostile work environment; including bullying in the workplace and workplace harassment by any non-employee
4.  discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);
5.  **Retaliation**;
6.  employment-related misrepresentations to an **Employee** of a **Company** or applicant for employment with a **Company** or an **Outside Entity**;
7.  employment-related libel, slander, humiliation, defamation or invasion of privacy;
8.  wrongful failure to employ or promote;
9.  wrongful deprivation of a career opportunity with a **Company**, wrongful discipline, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an **Employee** reference;
10. failure to grant tenure; or
11. any other employment related tort

12. with respect to 1 through 11 above, negligent hiring, retention, training, supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent organizational policies and procedures, or violation of an individual's civil rights;

but only if the actual or alleged **Employment Practices Violation** is brought by an **Employee** or an **Outside Entity Employee**, or by an applicant for employment with a **Company** or an **Outside Entity**.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 5 |
| **NAMED INSURED** | Eustis Mortgage Corporation |
| **POLICY NUMBER** | RVA1001144 03 |
| **EFFECTIVE DATE** | August 19, 2022 |

This endorsement modifies only the selected COVERAGE ELEMENTS(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE ELEMENT(s) indicated by an "X" below

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY COVERAGE ELEMENT
☐ NOT FOR PROFIT DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE ELEMENT

# ELEMENTS ENHANCEMENT ENDORSEMENT – EMPLOYMENT PRACTICES

It is agreed:

AMENDMENTS TO GENERAL TERMS AND CONDITIONS

1. Section III SPOUSES ESTATES of the General Terms and Conditions is amended to read:

   Subject otherwise to the terms, conditions and limitations of this policy, this policy provides coverage for any **Claim** solely for **Wrongful Acts** committed or allegedly committed by the **Individual Insureds** made against:

   (i) estates, heirs, or legal representatives of any deceased **Individual Insureds**, including a trust or estate planning vehicle of an **Individual Insureds**, or the legal representatives of any **Individual Insureds** in the event of incompetence, insolvency or bankruptcy, and who was an **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claim** is based were alleged to have been committed in the event of their incompetency, insolvency or bankruptcy; or

   (ii) the lawful spouse or legally recognized **Domestic Partner** (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world and hereinafter included in the term "spouse") of any such **Individual Insured** for all **Claims** arising solely out of his or her status as spouse of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse, or property transferred from the **Individual Insured** to the spouse.

**2.**  Section X SUBROGATION of the General Terms and Conditions is amended to read:

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to bring suit effectively in the name of any **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Individual Insured** or against any current or former direct or indirect shareholder of the **Named Insured** or any affiliate or control person of any such shareholder under this policy unless such **Individual Insured** or current or former direct or indirect shareholder of the **Named Insured** or any affiliate or control person of any such shareholder has been convicted of a criminal act or been determined by a final un-appealable adjudication in the underlying action to have committed a dishonest or fraudulent act or to have obtained any personal profit or financial advantage to which such **Individual Insured** was not legally entitled.

In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer**'s subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances. Additionally, upon the **Insurer** making any payment of **Loss** within the applicable Retention, the **Insurer** shall have a direct contractual right under this policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States), such **Loss** which was paid within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer**'s subrogation right pursuant to this Section X. and any other rights the **Insurer** may have under applicable law.

In the event the **Insurer** recovers amounts it paid under this policy, the **Insurer** will reinstate the exhausted portion of the Limits of Liability of this policy to the extent of such recovery, less its costs incurred in administering and obtaining such recovery.

**3.**  Section XI REPRESENTATIONS AND SEVERABILITY of the General Terms and Conditions is amended to read:

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this policy as being accurate and complete. All such statements and representations are the basis of this policy and are to be considered as incorporated into this policy.

In the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under any individual **Coverage Element** then that respective **Coverage Element** and only that **Coverage Element** shall be void *ab initio* as to any **Insured** who knew as of the inception date of the **Policy Period** of the facts that were not accurately and completely disclosed in the **Application** and who with the intent to deceive, disclosed such facts, or withheld their knowledge that such facts were not complete. Solely for purposes of determining whether this policy shall be void *ab initio* as to an **Insured**, such aforesaid knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured** and only the knowledge possessed by any past, present or future Chairman, chief executive officer or chief financial officer of a **Company** shall be imputed to such **Company**.

The **Application** shall be construed as a separate application for coverage by each **Individual Insured.**

AMENDMENTS TO EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT

**4.** Section II. B, DEFINITIONS in the Employment Practices Liability **Coverage Element**, is amended to read:

D.  **Defense Costs** means reasonable fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment and or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

**5.**  A. Item 3. of the Employment Practices Liability **Coverage Element** DECLARATIONS is amended by adding the following:

**Privacy Violation Defense Cost** Sub-Limit of Liability          $25,000

B. Section II. Definitions D. **Employment Practices Violation,** of the Employment Practices Liability **Coverage Element,** is amended by adding the following:

**Privacy Violation** means:

1. theft of **Personally Identifiable Non-Public Information** that is in the care, custody or control of the **Company**, or an independent contractor that is holding or processing such information on behalf of the **Company**;
2. the **Company**'s failure to timely disclose a incident or event triggering a violation of any **Breach of Notice Law**;
3. failure of the **Insured** to comply with that part of a **Privacy Policy** that specifically:
   a.  prohibits or restricts the **Company**'s disclosure, sharing or selling of an **Employee's Personally Identifiable Non-Public Information**;
   b.  requires the **Company** to provide access to **Personally Identifiable Non-Public Information** or to correct incomplete or **inaccurate Personally Identifiable Non-Public Information** after a request is made by an **Employee**; or
   c.  mandates procedures and requirements to prevent the loss of **Personally Identifiable Non-Public Information**.

**Breach of Notice Law** means any state, federal or foreign statute or regulation that requires notice to persons whose **Personally Identifiable Non-Public Information** was accessed or may have been accessed by an unauthorized person.

**Personally Identifiable Non-Public Information** means information about an Employee obtained by the **Insured** solely in its capacity as the employer of such individual. **Personally Identifiable Non-Public Information** does not include any information obtained by the **Insured** in any other capacity including without

limitation information obtained as the result of the **Employee** being a customer of the **Company**.

**Privacy Policy** means the internal or publicly accessible written documents that set forth the **Company**'s policies, standards and procedures for collection, use, disclosure, sharing, dissemination and correction or supplementation of, and access to, **Personally Identifiable Non-Public Information**.

C. Section IV. LIMIT OF LIABILITY is amended by adding the following:

The maximum limit of the **Insurer**'s liability for all **Privacy Violations** incurred during the **Policy Period** and the Extended Reporting Period**,** if applicable, in the aggregate shall be the **Privacy Violation Defense Cost** Sub-Limit of Liability set forth in Item 3. of the Employment Practices Liability **Coverage Element** Declarations. The **Privacy Violation Defense Cost** Sub-Limit of Liability shall be part of, and not in addition to, the Employment Practices Liability **Coverage Element** Limit of Liability as set forth in Item 3. of the Employment Practices Liability **Coverage Element** Declarations which is also part of and not in addition to the Policy Aggregate Limit of Liability shown in Item 3. of the General Declarations.

D. Section III. EXCLUSIONS is amended by adding the following:

alleging, arising out of, based upon or attributable to any **Privacy Violations**, however, this exclusion shall not apply to **Defense Costs** up to the sub-limit of liability shown in Item 3. of the Employment Practices Liability **Coverage Element** Declarations as provided for in paragraph 1. above, which sub-limit shall be part of, and shall reduce the Employment Practices Liability **Coverage Element** Limit of Liability  and, if applicable, the Policy Aggregate Limit of Liability shown in Item 3. of the General Declarations.

**6.**   Section III EXCLUSIONS C.  is amended to read:

C. alleging, arising out of, based upon or attributable to any demand, suit, EEOC (or similar state, local or foreign agency)proceeding or investigation or other proceeding pending against any **Insured**, or order, decree or judgment entered for or against any **Insured**, on or prior to the Continuity Date set forth in Item 5 of the Employment Practices Liability **Coverage Element** Declarations which would otherwise be covered by the terms and conditions of the Employment Practices Liability **Coverage Element**, or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior demand, suit, EEOC (or similar state, local or foreign agency) proceeding or investigation or other proceeding in the underlying demand, order, decree or judgment;

**ENDORSEMENT NUMBER**        6
**NAMED INSURED**        Eustis Mortgage Corporation
**POLICY NUMBER**        RVA1001144 03
**EFFECTIVE DATE**        August 19, 2022

This endorsement modifies only the selected **COVERAGE ELEMENT**(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the **COVERAGE ELEMENT**(s) indicated by an "X" below.

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY LIABILITY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY LIABILITY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY LIABILITY COVERAGE ELEMENT
☐ NOT FOR PROFIT DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE ELEMENT

## BIOMETRIC PRIVACY CLAIM EXCLUSION

THIS ENDORSEMENT MODIFIES THE POLICY.  PLEASE READ IT CAREFULLY.

In consideration of the premium charged, it is hereby understood and agreed that Exclusions III of the Policy is amended to include:

> The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** arising out of, based upon or in consequence of, resulting from or in any way involving any actual or alleged violation of any federal, state, municipal or local statutory biometric privacy law or any such similar law or statute anywhere in the world that governs or relates to the collection, use, safeguarding, handling, storage, retention or destruction of biometric identifiers, biometric data or biometric information of any kind, including, but not limited to retina or iris scans, fingerprints, voiceprints or scans of hand or face geometry;

> All other terms, conditions and exclusions remain unchanged.

**ENDORSEMENT NUMBER**      7
**NAMED INSURED**      Eustis Mortgage Corporation
**POLICY NUMBER**      RVA1001144 03
**EFFECTIVE DATE**      August 19, 2022

This endorsement modifies only the selected **COVERAGE ELEMENT**(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the **COVERAGE ELEMENT**(s) indicated by an "X" below.

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY LIABILITY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY LIABILITY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY LIABILITY COVERAGE ELEMENT
☐ NOT FOR PROFIT DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE ELEMENT

## THIRD PARTY VIOLATION CREDIT EXCLUSION

THIS ENDORSEMENT MODIFIES THE POLICY.  PLEASE READ IT CAREFULLY.

A **Third Party Violation** shall not include any **Claim** or circumstance alleging, arising out of, based upon or attributable to any violation or alleged violation of the Fair Housing Act, Equal Credit Opportunity Act, the Fair Credit Reporting Act, the Federal Truth-In-Lending Act, Fair Debt Collection Practices Act or any other state or federal lending or debt collection statutes and/or regulations, including but not limited to, redlining, credit discrimination or steering.

A **Third Party Violation** shall not include any **Claim,** in whole or in part, alleging that the **Insured's** website violated the Americans with Disability Act.

**ENDORSEMENT NUMBER**        8
**NAMED INSURED**        Eustis Mortgage Corporation
**POLICY NUMBER**        RVA1001144 03
**EFFECTIVE DATE**        August 19, 2022

This endorsement modifies only the selected COVERAGE ELEMENTS(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE ELEMENT(s) indicated by an "X" below

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY COVERAGE ELEMENT

# DEFENSE COST SUB-LIMIT FOR IMMIGRATION INVESTIGATIONS

1. Item 3. of the **Employment Practices Liability Coverage Element** Declarations is amended by adding the following:

   (i) **Immigration Investigation Defense Cost** Sub-Limit of Liability      $25,000

2. The definition of **Employment Practice Violation**, in Item II Definitions of the **Employment Practices Liability Coverage Element,** is amended by adding the following:

**Immigration Investigation** means:
An investigation of an **Insured** by any State or Federal governmental agency for actually or allegedly hiring undocumented workers in violation of the Immigration Reform & Control Act of 1986 (IRCA) or any other similar federal or state laws or regulations regarding the employment of undocumented workers.

3. Section IV. Limits of Liability is amended by adding the following:

   The maximum limit of the **Insurer**'s liability for all **Immigration Investigations** during the **Policy Period** and the Extended Reporting Period, if applicable, in the aggregate shall be the **Immigration Investigation Defense Cost** Sub-Limit of Liability set forth in Item 3(i) of the **Employment Practices Liability Coverage Element** Declarations. The **Immigration Investigation Defense Cost** Sub-Limit of Liability shall be part of, and not in addition to, the **Employment Practices Liability Coverage Element** Limit of Liability as set forth in Item 3. of the **Employment Practices Liability Coverage Element** Declarations which is also part of and not in addition to the Policy Aggregate Limit of Liability shown in Item 3. of the General Declarations.

4. Section III Exclusions, is amended to include:

alleging, arising out of, based upon or attributable to any **Immigration Investigation**, however, this exclusion shall not apply to **Defense Costs** up to the sub-limit of liability shown in Item 3(i) of the **Employment Practices Liability Coverage Element** Declarations as provided for in paragraph 1. above, which sub-limit shall be part of, and shall reduce the **Employment Practices Liability Coverage Element** Limit of Liability  and, if applicable, the Policy Aggregate Limit of Liability shown in Item 3. of the General Declarations.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 9 |
| **NAMED INSURED** | Eustis Mortgage Corporation |
| **POLICY NUMBER** | RVA1001144 03 |
| **EFFECTIVE DATE** | August 19, 2022 |

This endorsement modifies only the selected **COVERAGE ELEMENT**(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the **COVERAGE ELEMENT**(s) indicated by an "X" below.

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY LIABILITY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY LIABILITY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY LIABILITY COVERAGE ELEMENT
☐ NOT FOR PROFIT DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE ELEMENT

# AMEND REPORTING AND NOTICE (TOP EXECUTIVES)

THIS ENDORSEMENT MODIFIES THE POLICY.  PLEASE READ IT CAREFULLY.

Section **VI. Reporting and Notice** of the General Terms and Conditions, paragraph B. is removed and replaced with the following:

If, during the **Policy Period** or Extended Reporting Period, if applicable, the Chief Executive Officer, Chief Financial Officer, General Counsel, Director or Human Resources, Risk Manager or equivalent position of the **Insured** becomes aware of any circumstances or **Wrongful Act** which may reasonably be expected to give rise to a **Claim** being made against the **Insured** and give notice, by mail or electronically to the address set forth in Item 6 (b) of the Declarations of such circumstances, along with a description of the alleged **Wrongful Act,** the allegations anticipated, the reasons for anticipating a **Claim**, and full particulars as to dates, persons and entities involved, then any **Claim** which subsequently is made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstance or **Wrongful Act** originally was reported.

All other terms and conditions of the Policy remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 10 |
| **NAMED INSURED** | Eustis Mortgage Corporation |
| **POLICY NUMBER** | RVA1001144 03 |
| **EFFECTIVE DATE** | August 19, 2022 |

This endorsement modifies only the selected **COVERAGE ELEMENT**(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the **COVERAGE ELEMENT**(s) indicated by an "X" below.

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY LIABILITY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY LIABILITY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY LIABILITY COVERAGE ELEMENT
☐ NOT FOR PROFIT DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE ELEMENT

## CONTINUITY DATE FOR EXCESS LIMIT OF LIABILITY

THIS ENDORSEMENT MODIFIES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that with respect to that portion of the Limit of Liability shown in Item 3. of the Declarations which is in excess of $1,000,000, the **Insurer** shall not be liable for **Loss** on account of any **Claim** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

a. any prior or pending litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry, including without limitation any investigation by the United States Department of Labor or the United States Equal Employment Opportunity Commission, filed or pending on or before August 19, 2018; or

b. any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry, including any investigation by the United States Department of Labor or the United States Equal Employment Opportunity Commission.

**ENDORSEMENT NUMBER**   11
**NAMED INSURED**     Eustis Mortgage Corporation
**POLICY NUMBER**     RVA1001144 03
**EFFECTIVE DATE**     August 19, 2022

This endorsement modifies only the selected **COVERAGE ELEMENT**(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the **COVERAGE ELEMENT**(s) indicated by an "X" below.

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY LIABILITY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY LIABILITY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY LIABILITY COVERAGE ELEMENT
☐ NOT FOR PROFIT DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE ELEMENT

## THIRD PARTY CONTINUITY DATE FOR EXCESS LIMIT OF LIABILITY

THIS ENDORSEMENT MODIFIES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that with respect to that portion of the Limit of Liability shown in Item 3. of the Declarations which is in excess of $1,000,000, the **Insurer** shall not be liable for **Loss** on account of any **Claim** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Third Party Violation** filed or pending on or before August 19, 2018.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 12 |
| **NAMED INSURED** | Eustis Mortgage Corporation |
| **POLICY NUMBER** | RVA1001144 03 |
| **EFFECTIVE DATE** | August 19, 2022 |

This endorsement modifies only the selected COVERAGE ELEMENTS(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE ELEMENT(s) indicated by an "X" below

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY COVERAGE ELEMENT

## FAIR LABOR STANDARDS ACT DEFENSE COSTS SUBLIMIT EXCLUDING CALIFORNIA AND FFCRA VIOLATIONS

1. Item 3 of the **Employment Practices Liability Coverage Element** Declarations is amended by adding the following:

    **Fair Labor Standards Act Defense Cost** Sub-Limit of Liability          $100,000

2. Section IV. Limits of Liability is amended by adding the following:

    The maximum limit of the **Insurer**'s liability for **Defense Costs** applicable to the coverage otherwise excluded by H. in Section III Exclusions, during the **Policy Period** and the Extended Reporting Period**,** if applicable, in the aggregate shall be the **Fair Labor Standards Act Defense Cost** Sub-Limit of Liability set forth in Item 3(f) of the **Employment Practices Liability Coverage Element** Declarations. The **Fair Labor Standards Act Defense Cost** Sub-Limit of Liability shall be part of, and not in addition to, the **Employment Practices Liability Coverage Element** Limit of Liability as set forth in Item 3 of the **Employment Practices Liability Coverage Element** Declarations which is also part of and not in addition to the Policy Aggregate Limit of Liability shown in Item 3. of the General Declarations.

3**. Exclusion H.** in Section III. Exclusions, is amended to read:

    H. alleging, arising out of, based upon or attributable to:
    1. the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered (other than tort-based back pay or front pay damages for non-conversion related torts);
    2. improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**; or
    3. the failure to provide or enforce legally required meal or rest break periods;

This Exclusion shall not apply to:

a.  the award of damages attributable to **Retaliation**;

b.  **Defense Costs** up to the **Fair Labor Standards Act Defense Cost** Sub-Limit of Liability shown in Item 3(f) of the **Employment Practices Liability Coverage Element** Declarations as provided for in paragraph 1. above, which sub-limit shall be part of, and shall reduce the **Employment Practices Liability Coverage Element** Limit of Liability  and, if applicable, the Policy Aggregate Limit of Liability as shown in Item 3. of the General Declarations.

The **Fair Labor Standards Act Defense Cost** sublimit does not apply:
1.  to any past, present, or future **Employees** located in California;
2.  any **Claims** alleging, arising out of, based upon or attributable to the Families First Coronavirus Response Act.

**ENDORSEMENT NUMBER**           13
**NAMED INSURED**                  Eustis Mortgage Corporation
**POLICY NUMBER**                 RVA1001144 03
**EFFECTIVE DATE**                  August 19, 2022

This endorsement modifies only the selected COVERAGE ELEMENTS(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE ELEMENT(s) indicated by an "X" below

☐ DIRECTORS AND OFFICERS AND PUBLIC COMPANY COVERAGE ELEMENT
☐ DIRECTORS AND OFFICERS AND PRIVATE COMPANY COVERAGE ELEMENT
☒ EMPLOYMENT PRACTICES LIABILITY COVERAGE ELEMENT
☐ FIDUCIARY COVERAGE ELEMENT

## ADD MAILING ADDRESS

It is agreed Item 1. of the General Declarations (Form SLC-3 USA NMA2868 and LL-DEC-GTC-CW) are deleted and replaced with the following:

    1.  **NAMED INSURED:**

        (a) **Named Insured Address:**
            1001 Julia Street
            New Orleans, LA 70113

        (b) **Named Insured Mailing Address:**
            798 S. Rampart St.
            New Orleans, LA 70113