UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EUSTIS MORTGAGE CORPORATION                    CIVIL ACTION

VERSUS                                         NO. 24-2597

AMERICAN ZURICH INSURANCE COMPANY and          SECTION "A" (3)
REPUBLIC VANGUARD INSURANCE COMPANY
d/b/a AMTRUST FINANCIAL COMPANY

### ORDER AND REASONS

Before the Court is a **Motion for Judgment on the Pleadings (Rec. Doc. 19)**, filed by Defendant Republic Vanguard Insurance Company d/b/a Amtrust Financial Company ("RVIC"). The motion, noticed for submission on April 16, 2025,[1] is considered on the briefs and without oral argument.[2] The plaintiff, Eustis Mortgage Corporation ("Eustis") opposes the motion. For the following reasons, the motion is denied.

### I. BACKGROUND

This is an insurance matter arising out of a business dispute that was settled before another court in this District.[3] Eustis is a mortgage lender doing business in Louisiana and Texas.[4] In August 2022, it contracted for employment practices liability ("EPL") insurance coverage with Defendant RVIC and general commercial insurance coverage with Defendant American Zurich Insurance Company ("Zurich").[5]

---

[1] The motion was originally noticed for submission on March 19, 2025. At the request of the parties, the Court continued the submission date. Rec. Doc. 23.

[2] RVIC requested oral argument. Rec. Doc. 21. Given the excellent briefing by the parties, the Court finds that oral argument is unnecessary to determine the issues before it.

[3] *See* Rec. Doc. 1-4, Petition, ¶ 18 (citing *Alred, et al. v. Eustis Mort. Corp.*, No. 23-2145 (Vitter, J.)).

[4] Rec. Doc. 1-4, ¶ 1.

[5] Rec. Doc. 1-4, ¶ 9, 14.

During the covered period(s), former Eustis employees filed a lawsuit against it alleging employment-related causes of action ("the Alred Action").[6] After Eustis received notice of the Alred Action, it notified RVIC of the claim against it pursuant to the policy terms. According to Eustis, RVIC initially accepted coverage, but later "reversed itself and [denied] coverage under the [RVIC] policy."[7] Coverage was allegedly denied because the Alred Action "did not allege an Employment Practices Violation and/or that coverage was barred by a policy exclusion relating to actions arising from 'contracts or Agreements.'"[8] After RVIC denied coverage under the EPL policy, Eustis notified Zurich of the lawsuit and demanded indemnity for defense costs on the basis that "the Lawsuit allege[d] an 'advertising injury' as defined and covered by the Zurich Policy."[9] Zurich also denied coverage.[10]

On July 25, 2024, the aggrieved former employees settled the Alred Action against Eustis and this lawsuit was filed in state court two months later.[11] On November 4, 2024, the matter was removed to this Court.[12] According to the complaint, RVIC breached its insurance contract with Eustis "by refusing to defend and/or indemnify Eustis in the [underlying lawsuit], which specifically allege[d] wrongful termination of employment and other employment related torts."[13] The complaint likewise alleges that Zurich breached its insurance contract "by refusing to defend and/or indemnify Eustis in the [underlying lawsuit], which specifically allege[d] a 'personal and

---

[6] Rec. Doc. 1-4, ¶ 20.

[7] Rec. Doc. 1-4, ¶ 21.

[8] Rec. Doc. 1-4, ¶ 21.

[9] Rec. Doc. 1-4, ¶ 23.

[10] Rec. Doc. 1-4, ¶ 24.

[11] *See Alred, et al. v. Eustis Mort. Corp.*, No. 23-2145, Rec. Doc. 80 (filed July 25, 2024); Rec. Doc. 1-4.

[12] Rec. Doc. 1.

[13] Rec. Doc. 1-4, ¶ 28.

advertising injury.'"[14] As a result of the insurers' alleged breaches of contract, Eustis asserts that it is entitled to compensatory and consequential damages.[15]

The instant Motion for Judgment on the Pleadings was filed by RVIC on February 26, 2025.[16] The motion principally argues that RVIC has no duty to defend or indemnify Eustis in connection with the Alred Action for two reasons: first, the Alred Action did not allege an employment practices violation covered under the RVIC EPL policy; and second, even if it did, the policy contained a contract exclusion that precluded any duty to indemnify Eustis for amounts it paid to settle the Alred Action.[17] In opposition, Eustis contends (i) that the Court's review of RVIC's motion is limited to the four corners of the complaint and the four corners of the policy, and such a review makes clear that Eustis plead a plausible claim that liability exists under the policy; and (ii) that the issue of whether the policy's contract exclusion eliminates RVIC's duty to indemnify Eustis is premature.[18]

## II.   STANDARDS OF REVIEW

### i.   Judgment on the Pleadings

RVIC has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Rule 12(c) provides: "After the pleadings are closed but within such a time as to not delay the trial, any party may move for judgment on the pleadings."[19] Fed. R. Civ. P. 12(c).

---

[14] Rec. Doc. 1-4, ¶ 32.

[15] Rec. Doc. 1-4, ¶ 36.

[16] Rec. Doc. 19.

[17] Rec. Doc. 19-1, at 11, 20.

[18] Rec. Doc. 28, at 8, 22.

[19] The pleadings in this matter were closed as of November 19, 2024. *See* Rec. Doc. 7, Zurich's Answer; Rec. Doc. 8, RVIC's Answer.

Judgment on the pleadings is appropriate if the matter can be adjudicated by deciding questions of law rather than factual disputes. *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002). As it does when deciding a motion to dismiss under Rule 12(b)(6), the Court must consider the facts in the light most favorable to the non-moving party and will accept as true the plausible factual allegations in the non-moving party's pleadings. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *see generally* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 1368 (3d ed.). In deciding this motion, the Court must look only to the pleadings, *Brittan*, 313 F.3d at 904, but the pleadings include exhibits attached to the pleadings. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313–14 (5th Cir. 2002); *Voest–Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n.4 (5th Cir. 1998).

    **ii.   Conflicts-of-Law**

This dispute was removed to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332. "A federal court sitting in diversity applies the substantive law of the forum state, in this case Louisiana." *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014). "An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship." *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256–57 (5th Cir. 2022) (quoting *Supreme Servs. & Spec. Co. v. Sonny Greer, Inc.*, 2006-1827 (La. 5/22/07), 958 So.2d 634, 638).

Under Louisiana conflicts-of-law provisions, a conventional obligation "is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La.Civ.Code art. 3537. But before engaging in a fully considered conflicts-of-law analysis, "the Louisiana Supreme Court asks a more basic question: *is there any conflict of law present?*" *Hebert v. Hertz Corp., et al.*, No. 23-5484, 2024 WL 2077777, at *2 (E.D. La. May 9,

2024) (Lemelle, J.) (citing *Champagne v. Ward*, 2003 3211 (La. 1/19/05), 893 So.2d 773, 786 ("[W]e conclude that the appropriate starting point in a multistate case such as the present one is to first determine that there is a difference between Louisiana's . . . law and the . . . law of the foreign state, and then to conduct a choice-of-law analysis, as codified in Book IV of the Civil Code, to determine which state's law applies to the interpretation of the . . . policy."). If a conflict of law does not present itself, "then no choice-of-law analysis is necessary, and we simply apply the law of the forum state." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) (cleaned up, citation omitted).

The parties appear to agree that Louisiana law (and not Texas law) controls the interpretation of the RVIC insurance contract, but even if they did not agree, "Texas and Louisiana present no divergence in general interpretation principles . . . [so] we apply the substantive law of the forum state, Louisiana." *Hebert*, 2024 WL 2077777, at *2.

## III.   RELEVANT LAW

### i.   Duty to Defend and the "Eight-Corners Rule"

The duty to defend is a contractual obligation between the insurer and the insured per the insurance policy. *Choice Found. v. Law Indus.'s, LLC*, 2021-0431 (La.App. 4 Cir. 3/2/22), 336 So.3d 501, 505 (quoting *Arceneaux v. Amstar Corp.*, 2015-0588 (La. 9/7/16), 200 So.3d 277, 286). The insurer's "duty to defend is broader than the duty to indemnify." *Id.* at 505 (quoting *Spencer v. Chevron Corp.*, 2016-0174 (La.App. 4 Cir. 9/28/16), 202 So.3d 1055, 1059). "An insurer's duty to defend arises whenever the pleadings against the insured disclose a possibility of liability under the policy." *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872–73 (5th Cir. 2009) (citing *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987)). Only "[w]hen uncontroverted facts preclude the possibility of a duty to indemnify," does "the duty to defend cease[] and the duty to indemnify is negated." *Hoffpauir v. Cajundome Comm'n*, 2020-0423 (La.App. 3 Cir. 4/21/21), 318

So.3d 334, 339 (quoting *Maldonado v. Kiewit La. Co.*, 2013-756, 757 (La. App. 1 Cir. 3/24/14), 146 So.3d 210, 218–19).

To determine whether an insurer has a duty to defend, Louisiana courts employ the "eight-corners rule." *See Wisznia*, 759 F.3d at 449. "Under the 'eight-corners rule,' courts compare the four corners of the petition with the four corners of the insurance policy without resort to extrinsic evidence." *Id.* (citing *Martco*, 588 F.3d at 872). In comparing the petition with the policy, courts must take the following principles into account: ***first,*** ambiguous terms are strictly construed against the insurer, *id.* (citation omitted); ***second,*** allegations in the petition are to be liberally construed in favor of the insured, but the obligation to defend is determined by allegations of fact, not conclusions, *id.* (citation omitted); and ***third,*** it is the burden of the insured to prove the incident falls within the policy's terms, but the insurer bears the burden of proving the applicability of an exclusionary clause within a policy, *id.* (quoting *Doerr v. Mobil Oil Corp.*, 2000–0947 (La. 12/19/00), 774 So.2d 119, 124, *corrected on reh'g*, 2000–0947 (La. 3/16/01), 782 So.2d 573).

**ii.   Duty to Indemnify**

The duty to indemnify is the insurer's "obligation to provide coverage for damage claims." *Arceneaux*, 200 So.3d at 281 (citing *Elliott v. Cont'l Cas. Co.*, 2006-1505 (La. 2/22/07), 949 So.2d 1247, 1250). "[T]he insurer's duty to indemnify pertains to a covered claim after judgment against the insured in the underlying liability case." *Brilliant Nat'l Servs., Inc. v. Travelers Indem. Co.*, 2021-1471 (La.App. 1 Cir. 9/7/22), 349 So.3d 581, 585 (quotation and citation omitted). Therefore, resolution of the issue of the insurer's duty to indemnify the insured will necessarily depend on the disposition of the merits of the injured party's claim. *Lewis v. State Nat'l Ins. Co., Inc.*, 2022-0693 (La.App. 4 Cir. 5/19/23), 368 So.3d 653, 667. "Accordingly, Louisiana law generally provides that the issue of indemnity is premature and non-justiciable until the underlying issue of liability is

resolved . . . ." *Lexington Ins. Co. v. St. Bernard Par. Gov't*, 548 F. App'x 176, 180 (5th Cir. 2013) (citations omitted).

## IV. DISCUSSION

### i. Duty to Defend

As previously discussed, the Court's duty-to-defend analysis is limited to a comparison of the four corners of the complaint against the insured (here, the complaint in the Alred Matter) with the four corners of the insurance policy (here, the RVIC policy) without resorting to extrinsic evidence. *Wisznia*, 759 F.3d at 449. The Court proceeds accordingly.

#### a. *The four corners of the Alred complaint*

The original Alred complaint[20] alleged that the plaintiffs entered into an employment agreement with Eustis which outlined the plaintiffs' job responsibilities and compensation, established a fiduciary relationship, governed protocol for handling confidential information if the employment agreement was terminated, and provided a procedure for termination of the plaintiffs' employment at Eustis.[21] According to the complaint, the employment agreement provided that "each party could terminate [it] by giving the other party 120 days' notice of intent to terminate," and that once notice was given, the parties were to "immediately enter into discussions as to how to unwind the existing business relationship without causing undue harm to either business, customers or employee."[22]

---

[20] The Court refers to the allegations contained in the original complaint because it was the active pleading at the time Eustis alleges it was denied coverage under its policy with RVIC. *See* Rec. Doc. 1-4, ¶ 21.

[21] *Alred, et al. v. Eustis Mort. Corp.*, No. 23-2145, Rec. Doc. 1, ¶¶ 8–13

[22] *Alred, et al.*, No. 23-2145, Rec. Doc. 1, ¶ 13.

RVIC contends that, despite being styled as an "Employment Agreement," "the contract operated as a 'joint venture agreement.'" Rec. Doc. 19-1, at 4 n.16. The duty-to-defend analysis requires strict adherence to the eight-corners rule, which does not permit the Court to look outside of the complaint against the insured and the insurance policy. Accordingly, the Court declines to consider the merits of this contention at this stage of the proceedings, but notes for the purpose of the instant motion that there are sufficient allegations of fact supporting the contention that the agreement was an employment agreement, not a joint venture agreement. *See, e.g.*, *Alred, et al.*, No. 23-2145, Rec.

The original complaint principally asserted five causes of action: (i) breach of contract, (ii) tortious interference with existing and prospective business relations, (iii) breach of fiduciary duty, (iv) theft/misappropriation of trade secrets, and (v) conversion.[23]

In Count One, the Alreds contended:

> The Employment Agreement is a valid and enforceable contract between Plaintiffs and Defendant. Defendant breached the Employment Agreement by, among other things, (a) terminating the Employment Agreement without giving the required 120-day notice (b) not cooperating with Plaintiffs to unwind the business relationship, (c) failing to continue operations so as not to cause Plaintiffs harm, (d) failing to reconcile the loan reserve and distribute to Plaintiffs the excess amount, (e) keeping and using Plaintiffs' confidential and proprietary information following termination of Plaintiffs' employment, (f) communicating with Plaintiffs' customers in such a manner as to harm Plaintiffs' present and future business prospects.

*Alred, et al. v. Eustis Mort. Corp.*, No. 23-2145, Rec. Doc. 1, ¶ 20.

Count Two of the complaint alleged that, 10 days after Eustis terminated the plaintiffs' employment without proper notice, it unlawfully interfered with the plaintiffs' existing and prospective customer relationships by sending an email announcement to customers with the intent to "steal those customers."[24] As a result of the email, the complaint alleged that "many of Plaintiffs' customers have not referred any business to Plaintiffs."[25]

In Count Three of the complaint, the Alreds contended that Eustis owed them certain fiduciary duties, including the duties of loyalty, good faith, candor, the duty to refrain self-dealing,

---

Doc. 1, ¶ 8 (quoting a provision of the agreement that refers to the Alreds' "employment with EMC"); *see also Wisznia*, 759 F.3d at 449 ("It is well settled that the allegations of *fact*, and *not conclusions*, contained in the petition determine the obligation to defend.") (cleaned up, citation omitted).

[23] *Alred, et al.*, No. 23-2145, Rec. Doc. 1, ¶¶ 20–28. The First Amended Complaint did not include Count V.

[24] *Alred, et al.*, No. 23-2145, Rec. Doc. 1, ¶ 21.

[25] *Alred, et al.*, No. 23-2145, Rec. Doc. 1, ¶ 21.

the duty to act with integrity, and the duty of full disclosure.[26] The complaint further alleged that Eustis breached these duties when, among other things, it kept and used the plaintiffs' confidential information following the termination of their employment.[27] Based on the above described allegations in Count Three, the complaint also alleged violations of certain state and federal trade secret statutes, as well as common law trade secret misappropriation in Count Four and conversion in Count Five.[28]

### b. *The four corners of the RVIC policy*

The EPL coverage element of the RVIC policy provides under the heading "Insuring Agreements," that "[t]he Insurer shall pay Loss of an Insured arising from a Claim first made against such Insured during the Policy Period . . . or for any actual or alleged Wrongful Act of such Insured."[29] Under the heading "Defense," the RVIC policy further provides:

> [T]he Insurer shall have both the right and duty to defend any Claim made against an Insured alleging a Wrongful Act, even if such Claim is groundless. The Insurer shall have the right and duty to defend any Claim until the Limit of Liability . . . has been exhausted by payment of Loss.

As stated in the policy, the definition of "Insured," includes the "Company," which is the Named Insured or any Subsidiary.[30] The policy's Named Insured is Eustis Mortgage Corporation.[31] Additional policy terms relevant to the Court's analysis are listed below:

**"Claim":**
   1. [A] written demand for monetary, non-monetary or injunctive relief . . . ;
   2. [A] civil, . . . proceeding for monetary, non-monetary or injunctive relief which is commenced by:

---

[26] *Alred, et al.*, No. 23-2145, Rec. Doc. 1, ¶ 24.

[27] *Alred, et al.*, No. 23-2145, Rec. Doc. 1, ¶ 24.

[28] *Alred, et al.*, No. 23-2145, Rec. Doc. 1, ¶ 25–28.

[29] Rec. Doc. 19-6, at p. 17.

[30] Rec. Doc. 19-6, at p. 6.

[31] Rec. Doc. 19-6, at p. 7.

(i) service of a complaint or similar pleading; . . . .[32]

**"Loss":**

1. [T]he amount that any Insured becomes legally obligated to pay in connection with any covered Claim, including, but not limited to:
   (i) judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; . . . and
2. Defense Costs; . . . .

Loss shall not include: . . .

2. [M]atters which may be deemed uninsurable under the law pursuant to which this policy shall be construed;

Defense Costs shall be provided for items specifically excluded form Loss . . . provided such Defense Costs result from a covered Claim.[33]

**"Defense Costs":**

[R]easonable fees, costs and expenses consented to by the Insurer . . . resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured, but excluding compensation of any Individual Insured. Defense Costs shall not include any fees, costs or expenses incurred prior to the time that a Claim is first made against an Insured.[34]

**"Wrongful Act":**

[A]ny actual or alleged Employment Practices Violation or Third Party Violation.[35]

**"Employment Practices Violation":**

[T]he following actual or alleged acts whether committed directly or indirectly, intentionally or unintentionally:
1. wrongful, including constructive termination of employment (actual or constructive), dismissal or discharge;
2. breach of an implied contract of employment; . . .
6. employment-related misrepresentation to an Employee of a Company or applicant for employment with a Company or an Outside Entity;
7. employment-related libel, slander, humiliation, defamation or invasion of privacy; . . .
11. any other employment-related tort
12. with respect to 1 through 11 above, negligent hiring, retention, training, supervision, infliction of emotional distress or mental anguish, failure to

---

[32] Rec. Doc. 19-6, at p. 17.

[33] Rec. Doc. 19-6, at p. 18.

[34] Rec. Doc. 19-6, at p. 32 (amended definition of "Defense Costs").

[35] Rec. Doc. 19-6, at p. 20.

> provide or enforce adequate or consistent organizational policies and procedures, or violation of an individual's civil rights;
>
> but only if the actual or alleged Employment Practices Violation is brought by an Employee or an Outside Entity Employee, or by an applicant for employment with a Company or an Outside Entity.[36]
>
> **"Employee":**
>
> [A]ny past, present, or future employee of a Company, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including:
>     1. any part-time, seasonal and temporary employee,
>     2. volunteer, individual who is contracted to perform work for a Company, or independent contractor for a company in his or her capacity as such, or
>     3. an individual who is leased to a Company, . . . .[37]

The policy also includes one relevant exclusion, which provides:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured: . . .
>     J. alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any Insured under any express contract or agreement. This Exclusion shall not apply to:
>         1. liability which would have attached in the absence of such contract or agreement; or
>         2. Defense Costs.[38]

### c. An analysis pursuant to the "Eight-Corners Rule" establishes that the pleadings against Eustis disclosed a possibility of liability under the RVIC policy.

The policy provision titled "Defense" outlines the calculus necessary to determine whether RVIC owed Eustis a duty to defend.[39] Pursuant to this provision, RVIC "shall have both the right and duty to defend any Claim made against [Eustis] alleging a Wrongful Act, even if such Claim is groundless, false or fraudulent."[40] In other words, two conditions must be satisfied to trigger

---

[36] Rec. Doc. 19-6, at p. 28 (amended definition of "Employment Practices Violation").

[37] Rec. Doc. 19-6, at p. 17.

[38] Rec. Doc. 19-6, at p. 21.

[39] Rec. Doc. 19-6, at p. 22.

[40] Rec. Doc. 19-6, at p. 22.

RVIC's duty to defend: (1) a "Claim" was made against Eustis, and (2) the Claim alleges a "Wrongful Act." As explained below, both conditions are satisfied here.

*First,* the policy's definition of "Claim" comprises a civil proceeding such as the Alred Matter.[41] *Second,* the Alred Action alleged at least two Wrongful Acts of Eustis.[42] As explained above, the policy defines "Wrongful Act" to include an "Employment Practice Violation." The policy's definition of "Employment Practices Violation," includes "the following actual or alleged acts whether committed directly or indirectly, intentionally or unintentionally": "wrongful, including constructive termination of employment (actual or constructive), dismissal or discharge"; and "any other employment related tort."[43] The Alred Complaint alleged that Eustis (i) breached the Employment Agreement by terminating the Alreds' employment without giving the required 120-day notice,[44] and (ii) tortiously interfered with existing and prospective business

---

[41] *See* Rec. Doc. 19-6, at 17.

[42] "A duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded." *Lewis*, 368 So.3d at 666.

[43] Rec. Doc. 19-6, at p. 28

[44] *See Alred, et al. v. Eustis Mort. Corp.*, No. 23-2145, Rec. Doc. 1, ¶ 20; *see also id.* ¶ 14 ("Eustis' notice of immediate termination was a direct violation of the 120-day notice requirement in the Employment Agreement.").

RVIC contends that Eustis' claims should be dismissed because "[w]hile the RVIC Policy's definition of Employment Practices Violations does include 'wrongful termination,' it does not afford coverage for allegedly wrongful terminations of contracts, but rather 'wrongful . . . termination of employment." Rec. Doc. 19-1, at 14. In the context of the instant motion, the Court disagrees.

Put simply, the Alred complaint alleges there was a procedure in place for terminating the Alreds' employment contract, and Eustis did not follow that procedure. The policy does not include a definition for wrongful termination; instead, it broadly describes the covered "actual or alleged act" as "wrongful . . . termination of employment . . . , dismissal or discharge." Rec. Doc. 19-6, at p. 28. "[T]he test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage." *Motorola, Inc. v. Assoc. Indem. Corp.*, 2002-0716 (La.App. 1 Cir. 6/25/04), 878 So.2d 824, 836.

If two parties agree to follow a specific procedure for terminating employment, and a party later unilaterally disregards the agreed-to procedure, it logically follows that the other party to the agreement may have been wrongfully terminated/dismissed/discharged. In other words, given the broad nature of the relevant policy provision, the Court cannot say that the allegations in the Alred Action do not unambiguously exclude coverage under the RVIC policy.

relations by sending an email to the Alreds' customers that "[gave] the impression that Finance Home America has gone away and only Eustis remains."[45]

As a matter of Texas law, these are, at a minimum, non-frivolous claims.[46] But even if they were frivolous, the scope of RVIC's duty to defend extended to "groundless, false or fraudulent" claims.[47] Based on a plain reading of the policy's definition of "Employment Practices Violation," and taking as true the plausible allegations of the Alred Complaint, the Court finds that the "Claim" made against Eustis was based on alleged "Wrongful Act[s]" by Eustis. Accordingly, an analysis pursuant to the "Eight-Corners Rule" establishes that the pleadings against Eustis disclosed a possibility of liability under the policy, triggering RVIC's duty to defend. *Martco*, 588 F.3d at 872–73; *see also Elliot*, 949 So.2d at 1254 ("The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage.").

### ii. Duty to Indemnify

As previously discussed, resolving whether the insurer owed a duty to indemnify the insured will necessarily depend on the disposition of the merits of the injured party's claim. *Lewis*, 368 So.3d at 667. "Accordingly, Louisiana law generally provides that the issue of indemnity is premature and non-justiciable until the underlying issue of liability is resolved . . . ." *Lexington Ins. Co.*, 548 F. App'x at 180. At this stage of the proceedings, liability in the underlying case has

---

[45] *Alred, et al. v. Eustis Mort. Corp.*, No. 23-2145, Rec. Doc. 1, ¶¶ 17, 21–23.

[46] Rec. Doc. 19-1, at 18 n.64 (stating that the Alreds' employment was performed in Texas and subject to the laws of Texas); *see, e.g.*, *Cmty. Health Sys. Prof. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 682 (Tex. 2017) ("Further, a contract can modify an employee's at-will status and alter the procedural rights to which an employee is entitled if termination occurs."); *Door Control Servs., Inc. v. Besam Automated Entrance Sys., Inc.*, No. 01-41269, 2003 WL 342351, at *7 (5th Cir. 2003) ("Texas law adopts the view of the second Restatement that employment at will is treated analogously to prospective contracts with respect to tortious interference.").

[47] Rec. Doc. 19-6, at p. 22; *see Raskin v. Dall. Indep. Sch. Dist.*, 89 F.4th 280, 287 (5th Cir. 2023) ("A claim is frivolous when it is 'so lacking in merit that it [is] groundless.'") (quoting *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991)).

not yet been determined. Accordingly, the Court cannot yet determine, as a matter of law, whether RVIC is obligated to indemnify Eustis.

Accordingly;

**IT IS ORDERED** that RVIC's **Motion for Judgment on the Pleadings (Rec. Doc. 19)**, is **DENIED**.

May 20, 2025

                                                JAY C. ZAINEY
                                    UNITED STATES DISTRICT JUDGE